AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Texas

United States Courts
Southern District of Texas
**FILED**

*June 29, 2025*

Nathan Ochsner, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Raul Antonio Claros Sarmiento, Luis Miguel Claros Sarmiento, Darwin Martinez, Andys Luis Alvarez Herrera & Cesar Mauricio Velasquez | ) ) ) ) ) | Case No.  4:25-mj-0400 |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 26, 2025__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 United States Code, Section 846 | Conspiracy to possess with intent to distribute more than 5 kilograms of cocaine |

This criminal complaint is based on these facts:

See attached Affidavit of probable cause

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Nicole Miyako, Task Force Officer
*Printed name and title*

Sworn to before me telephonically.

Date: 06/29/2025

_____
*Judge's signature*

Peter Bray, United States Magistrate Judge
*Printed name and title*

City and state: Houston, Texas

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Nicole Miyako, being duly sworn, do hereby depose and state:

1. I am a Task Force Officer with the Federal Bureau of Investigation (FBI), assigned to the Houston Division, in Houston, Texas. I have been so employed since March 2025. As part of my official duties as Task Force Officer, I am currently assigned to the Safe Streets Task Force. This unit investigates various violations of criminal law focusing on gangs, drugs, firearms, and violent crimes. I have received training in the areas of violent crime and organized crime and have conducted various types of electronic surveillance, authorized interception of wire and electronic communications. I have participated in the execution of search warrants and the debriefing of defendants, witnesses, and informants. I have been trained to participate in federal and state investigations that could result in the arrest and conviction of individuals, who have violated federal law. As a Task Force Officer, I am authorized to investigate violations of law of the United States and execute warrants issued under the authority of the United States.

2. The facts contained in this affidavit are based on my knowledge, training, and experience and upon information provided to me by other law enforcement officers and individuals. Since this affidavit is made for the limited purpose of supporting probable cause for a Criminal Complaint, I have not set forth every fact learned during the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the crimes charged. Unless otherwise indicated, where actions, conversations, and statements of others are related herein, they are related in substance and in part only.

1

3. The facts in support of this affidavit and contained in the following paragraphs are the result of a joint investigation between the Federal Bureau of Investigation (FBI), Houston Police Department (HPD), and Department of Public Safety (DPS) into a criminal organization almost exclusively comprised of former members and associates of the transnational criminal organization, "Tren de Aragua" (TdA). This organization is known as Anti-Tren. Like TdA, the purposes of Anti-Tren include preserving and protecting the power and territory of Anti-Tren and its members and associates through acts involving attempted murder, including acts of violence and threats of violence directed at members and associates of TdA and enriching the members and associates of Anti-Tren through, among other things, the trafficking of firearms and controlled substances.

4. RAUL ANTONIO CLAROS SARMIENTO (R. SARMIENTO), LUIS MIGUEL CLAROS SARMIENTO (L. SARMIENTO), DARWIN MARTINEZ (D. MARTINEZ), ANDYS LUIS ALVAREZ HERRERA (A. HERRERA), and CESAR MAURICIO VELASQUEZ (C. VELASQUEZ) ("SUBJECTS") were identified through this investigation to be members and/or associates of Anti-Tren. This affidavit is being submitted in support of a criminal complaint charging the above-mentioned SUBJECTS with conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21 United States Code, Section 846.

5. I have not included each and every fact known concerning this investigation but have not omitted any material fact that undermines the statements and conclusions herein. I have put forth only the facts that I believe are necessary to establish probable cause to show that SUBJECTS violated Title 21 United States Code, Section 846.

**PROBABLE CAUSE**

6. In May 2025, the FBI, HPD and DPS began investigating Anti-Tren. Investigators used an FBI Confidential Human Source ("CHS 3") to conduct multiple firearm purchases from members and associates of Anti-Tren. After multiple law enforcement controlled purchases of firearms, from R. SARMIENTO and C. VELASQUEZ, R. SARMIENTO offered CHS 3 kilograms of cocaine from Bolivia that would be made available to CHS 1 in Houston, Texas.

7. On June 3, 2025, CHS 3 met with R. SARMIENTO at a restaurant in Houston, Texas. While at the restaurant, CHS 3 introduced another FBI Confidential Human Source (CHS 5) to R. SARMIENTO. CHS 5 was introduced to R. SARMIENTO as CHS 3's Spanish translator and someone who trafficks cocaine with CHS 3. The conversation was consensually recorded. R. SARMIENTO told CHS 3 and CHS 5 that he was in the business of transporting cocaine and offered use of his transportation network for a fee. The fee to transport would be based on the amount of cocaine and the distance to the drop off point.

8. On June 16, 2025, CHS 3 met with R. SARMIENTO at a restaurant in Houston, Texas. The conversation was consensually recorded. R. SARMIENTO brought with him an unknown male (FNU LNU) who he described as his solider. CHS 3 told R. SARMIENTO and FNU LNU that he/she needed cocaine transported from Houston, Texas to an area near Galveston, Texas. CHS 3 told R. SARMIENTO and FNU LNU that the amount of cocaine would be eight (8) to nine (9) kilograms and that R. SARMIENTO's crew would be paid half up front and then paid the remainder of the money once the cocaine was safely dropped off at a location chosen by CHS 3.

9. On June 19, 2025, CHS 5 met with R. SARMIENTO at a restaurant in Houston, Texas. The conversation was consensually recorded. R. SARMIENTO agreed to transport the

cocaine, and CHS 5 told R. SARMIENTO that the cocaine would be provided to R. SARMIENTO and his crew near the Meyerland Plaza in Houston, Texas. R. SARMIENTO requested the drop off location be provided the day of the transport.

10. On June 26, 2025, CHS 5 told agents that R. SARMIENTO had a crew of six (6) people and four (4) vehicles to transport the cocaine and R. SARMIENTO needed a pin drop of where to meet with CHS 5.

11. That same day, CHS 5 met with the SUBJECTS in front of a Chipotle Restaurant located at 8825 W Loop S, Houston, Texas 77096. CHS 5 explained to all the SUBJECTS that they would be paid for the transportation of "ocho cuadritos de pase" which CHS 5 explained translated to eight (8) squares/bricks of cocaine. CHS 5 told agents that based on previous conversations with R. SARMIENTO, R. SARMIENTO was fully aware that "pase" meant cocaine. Furthermore, CHS 5 told agents that "pase" is a common term used for cocaine and that "cuadritos" translates to squares which is a common term used for kilograms of cocaine. This conversation was consensually recorded. Subsequently, CHS 5 asked R. SARMIENTO to cross the street to 9009 W Loop S in Houston, Texas 77096 where CHS 5 would provide the cocaine to R. SARMIENTO.

12. R. SARMIENTO entered the passenger seat of a vehicle driven by A. HERRERA. A. HERRERA drove the vehicle across the street into a parking lot to pick up the cocaine and the payment. L. SARMIENTO, C. VELASQUEZ and D. MARTINEZ remained across the street at the Chipotle Restaurant in a lookout position.

13. Once R. SARMIENTO arrived across the street, CHS 5 gave R. SARMIENTO $8,000 and CHS 5 put a small pelican case, which the SUBJECTS believed contained the eight (8) kilograms of cocaine, into the vehicle driven by A. HERRERA. The below photograph depicts

4

CHS 5 putting the pelican case[1] into the vehicle driven by A. HERRERA while R. SARMIENTO sat in the passenger seat.



14. Before the operation, R. SARMIENTO asked CHS 5 to pay him directly the $8,000 and told CHS 5 that he would pay the other SUBJECTS $1,000 each.

15. Before CHS 5 took possession of the $8,000 from the agents, the agents coated the $8,000 with a powder substance that would transfer to anyone who touched the money. The powder substance is only visible with the use of a black light.

16. After paying R. SARMIENTO the $8,000 and giving R. SARMINETO and A. HERRERA the pelican case, R. SARMIENTO and A. HERRERA were arrested.

17. Agents retrieved the pelican case and the money from inside the vehicle driven by A. HERRERA. Inside the vehicle agents also found a loaded pistol. The below photographs of R. SARMIENTO and A. HERRERA's hands were taken after their arrests. R. SARMIENTO and A. HERRERA's hands both contained that powder that the agent previously put on the money.

---

[1] A pelican case is a suitcase.




| RAUL ANTONIO CLAROS SARMIENTO | ANDYS LUIS ALVAREZ HERRERA |




| RAUL ANTONIO CLAROS SARMIENTO | ANDYS LUIS ALVAREZ HERRERA |

18. After the arrests of R. SARMIENTO and A. HERRERA, L. SARMIENTO, C. VELASQUEZ and D. MARTINEZ, attempted to flee the scene from the group's lookout position across the street at the Chipotle Restaurant. However, DPS was able to conduct a traffic stop on the two (2) vehicles driven by L. SARMIENTO and D. MARTINEZ.

19. A white Cadillac SUV driven by C. VELASQUEZ was able to avoid law enforcement and depart the scene. C. VELASQUEZ was not arrested at that time.

20. Previously, on June 11, 2025, CHS 3 conducted a controlled purchase of a firearm from C. VALASQUEZ. During that transaction, C. VALASQUEZ drove the same white Cadillac SUV that he fled in on June 26, 2025.

21. In a post arrest interview, R. SARMIENTO told agents that C. VELASQUEZ was a member of his crew that met with CHS 5 at the Chipotle Restaurant and fled the scene in a white Cadillac SUV.

22. Based on the foregoing facts, I believe that there is probable cause that on June 26, 2025, RAUL ANTONIO CLAROS SARMIENTO, LUIS MIGUEL CLAROS SARMIENTO, DARWIN MARTINEZ, ANDYS LUIS ALVAREZ HERRERA, AND CESAR MAURICIO VELASQUEZ conspired to possess with intent to distribute more than 5 kilograms of cocaine in violation of Title 21 United States Code, Section 846.

_____
Nicole Miyako
Task Force Officer
Federal Bureau of Investigation

Sworn to before me and subscribed telephonically on this the 30th day of June 2025 and I find probable cause.

Signed on June 29, 2025, at Houston, Texas.

_____
Peter Bray
United States Magistrate Judge